FRIENDSHIP TELEPHONE COMPANY, a corporation,

*v.*

NEWARK TELEPHONE COMPANY, a corporation, et al.

[Submitted December 10th, 1917. Decided March 4th, 1918.]

1. On the application of the receiver appointed by the court of chancery to wind up the affairs of a corporation, incorporated under the Telegraph Companies act (*Comp. Stat. p. 5312*), whose charter has expired by its own limitation, the court of chancery has jurisdiction to fix

the terms and conditions of the sale of the property and to determine whether it shall be sold together or in parcels, and all other questions incidental to the disposition of the property.

2. When the business of a telephone company, incorporated under the Telegraph Companies act (*Comp. Stat. p. 5312*), is discontinued as a statutory consequence of the expiration of its charter, its physical property is not forfeited, but is appropriated by law to the payment of its *debts and for distribution to stockholders in a winding up proceeding.*

3. Where the charter of a telephone company, incorporated under the Telegraph Companies act (*Comp. Stat. p. 5312*), has expired by its own limitation, and the court of chancery has appointed a receiver to wind up its affairs on dissolution, under section 56 of the Corporation act (*Comp. Stat. p. 1636*), it is competent for that court, when justice and equity require it, to order a sale of its physical property, apart and free from its franchise to use the streets, when the ordinance of the city granting such secondary franchise contains no provision or condition prohibiting the separation of the physical property and the franchise.

Appeal of the city of Newark from an order of the court of chancery advised by Vice-Chancellor Lane.

*Mr. Harry Kalisch,* for the appellant mayor and common council of the city of Newark.

*Mr. Corwin Howell* and *Mr. John R. Hardin,* for the respondent New York Telephone Company.

The opinion of the court was delivered by

TRENCHARD, J.

This is an appeal from an order of the court of chancery refusing to modify an earlier order directing the receiver of the Newark Telephone Company to accept an offer to purchase the physical property of the company, separate from its secondary franchise.

The Newark Telephone Company was incorporated August 7th, 1895, under the Telegraph Companies act. *Comp. Stat. p. 5312.* By the certificate of incorporation its existence was limited to twenty years. Its charter, therefore, expired on August 7th, 1915. After the expiration of the charter, on bill filed by a stockholder and creditor, George W. C. McCarter was appointed by the court of chancery receiver to wind up its affairs

on dissolution under section 56 of the Corporation act. *Comp. Stat. p. 1636.* Pursuant to the requirements of the statute he discontinued the business and proceeded to settle and close the affairs of the corporation and incidentally to dispose of its property.

The property of the corporation comprised (1) physical assets, consisting of conduits, exchange poles, central office equipment, exchange pole lines, exchange underground cable, office furniture and fixtures, general tools and implements, materials and supplies, appraised at $66,343; and (2) a franchise to use the streets granted by an ordinance of the city of Newark passed December 5th, 1895.

In June, 1917, the receiver received an offer from the New York Telephone Company, the respondent herein, to purchase all the physical property and plant of the Newark Telephone Company, "but not including the franchise, or in any way subject to the franchise granted to said company by the city of Newark" for the sum of $75,000 in cash, subject to the approval of the court of chancery.

The receiver brought this offer before that court and an order was made directing the city of Newark and the creditors and stockholders of the Newark Telephone Company to show cause why the receiver should not be ordered to accept the offer. This order to show cause was duly served, and, no one appearing on the return day, the vice-chancellor directed that the offer should be accepted.

Thereafter the city of Newark made an application that the order directing acceptance of the offer be opened and modified and, after hearing, the application was denied. The city now appeals and challenges the power and jurisdiction of the court to make the order directing the sale of the physical property and assets apart and free from the franchise granted to the company by the city.

We are of the opinion that the court of chancery had jurisdiction and that its order was proper.

The jurisdiction of the court to direct its receiver in the disposition of the property of a dissolving corporation cannot be doubted.

Under section 53 of the Corporation act (*Comp. Stat. p. 1634*) all corporations, whether they expire by their own limitation or be otherwise dissolved, are continued bodies corporate for two purposes—(1) to prosecute and defend suits, and (2) to enable them "to settle and close their affairs, to dispose of and *convey* their property and to divide their capital, *but not for the purpose of continuing the business for which they were established."*

In *Grey* v. *Newark Plank Road Co., 65 N. J. Law 603*, it was in effect held that the expiration of the charter of a corporation does not result in the forfeiture of its assets.

By section 54, upon the dissolution of a corporation, its directors are continued as trustees

"with full power to settle the affairs, collect the outstanding debts, sell and *convey* the property, and divide the moneys and other property among the stockholders, after paying its debts, so far as such moneys and property shall enable them."

The directors are given power to prescribe the terms and conditions of the sale of the property, and to sell *all or any part* for cash, or partly on credit, and to take mortgages and bonds for part of the purchase price for *all or any part* of the property.

By section 56 jurisdiction is conferred upon the court of chancery, when any corporation shall be dissolved, upon the application of any creditor or stockholder,

"to take charge of the estate and effects thereof, and to collect the debts and property due and belonging to the corporation * * * and to do all other acts which might be done by such corporation, if in being, that may be necessary for the final settlement of its unfinished business."

For the purpose of exercising this jurisdiction the court may continue the directors as trustees, or may appoint a receiver of the corporation, "and the powers of such trustees or receivers may be continued as long as the court shall think necessary for such purposes."

Section 57 provides:

"The court of chancery shall have jurisdiction of said application *and of all questions arising in the proceedings thereon,* and may make such orders and decrees therein as justice and equity shall require."

In the present case the court of chancery exercised this jurisdiction by appointing its receiver, and it had complete control over all questions arising, its jurisdiction being as broad as "justice and equity shall require."

It follows, therefore, that the court had jurisdiction, on application of the receiver, to fix the terms and conditions of the sale of the property, and to determine whether the property should be sold together or in parcels, and all other questions incidental to the disposition of the property.

It seems to be contended by the city that the company's physical property was forfeited to the city by reason of the discontinuance of its business upon the expiration of its charter. Not so. The discontinuance of the telephone service was the statutory consequence of the expiration of the charter and was not the affirmative act of the corporation. Upon the expiration of its charter the statute appropriated its property in payment of its debts and for distribution to its stockholders in a winding up proceeding.

The real contention of the city is that the order for separate sale is improper because the physical assets of the company are so united to the franchise granted to it by the city that such physical assets cannot be sold separate from the franchise. · We think that contention is unsound.

The company was incorporated under the. Telegraph Companies act of 1875, and the acts supplementary thereto and amendatory thereof, and by such incorporation acquired not only the powers especially mentioned in that act, but also acquired all the powers and became subject to all the provisions of the Corporation act, and the acts supplementary thereto and amendatory thereof.

By section 1 of the act of 1875 (*Rev. of 1877 p. 1174; Gen. Stat. p. 3457*) it is provided that the incorporators, upon taking the steps outlined for incorporation, shall thereby become a body politic and corporate, with power to sue and be sued,

"to purchase, hold or *convey any personal or real estate as may be necessary for the purposes of this act, with all the powers* and subject to all the provisions *of the act concerning corporations.*"

Later, section 1 of the act was amended (*P. L. 1900 p. 74; Comp. Stat. p. 5312 § 1*), changing the clause above quoted so that it reads

"to purchase and *convey such real and personal estate as the purposes of the corporation shall require*, with all the powers and privileges contained in the act concerning corporations, so far as the same are necessary or convenient to the attainment of the objects set forth in said certificate, and subject to the provisions, restrictions and liabilities contained in said act, so far as the same are appropriate to and not inconsistent with this act."

By the Corporation act (*Comp. Stat. p. 1597 § 1* subsection 4) a corporation is empowered "to hold, purchase and *convey such real and personal estate as the purposes of the corporation shall require* * * *."

There is, therefore, no doubt that the Newark Telephone Company, had its charter not expired and were it not now in the hands of a receiver on dissolution (who has undoubted power to convey under sections 53 and 56 of the Corporation act), would have full power to convey such real or personal property "as the purposes of the corporation shall require," and there is nothing in any of these enabling statutes which requires the inseparable union for all time of the secondary franchise and the physical assets of the corporation.

It also is quite plain that the ordinance itself, by which the city granted to the company the right to use its streets, does not impose any conditions which interfere with the separation of the physical assets and the franchise in the circumstances now presented.

Section 12 of this ordinance provides that in case the franchise granted thereby shall be assigned by the company to any other person or corporation, the franchise so assigned shall be held and enjoyed by the assignee, subject to all the conditions and restrictions of the franchise. It further provides that in case the assignee is vested with any similar franchises

"all such privileges and franchises at that time belonging to such assignee or transferee shall, after such assignment or transfer, be held and enjoyed subject to all the conditions, restrictions, limitations and payments aforesaid."

Section 16 provides that the rights and privileges granted thereunder shall cease and be determined at the expiration of fifty years from passage of the ordinance, and that at the expiration of that period

"all of the subways, cables, wires, conduits and other property or appliances *of said telephone company then* within the streets or public places of the City of Newark, shall become the property of the City of Newark, and the title thereto shall pass to and vest in the Mayor and Common Council of the City of Newark."

Nowhere in the ordinance is there any prohibition of the right of the company to sell its physical assets. They might be sold and removed from the "streets or public places of the city" and would in that case be freed from the reversion clause of the ordinance. It is only the physical property *then* in the streets or public places of the city (namely, in 1945) and *then* the property of the company which under the provisions of the ordinance are to revert to the city.

The company made no effort in its lifetime to dispose of either its physical assets or its secondary franchise, though both were salable, and now by the expiration of its charter it is incapacitated to further continue its business and enjoy either its physical assets or its franchise.

The situation that arises therefore is that we have a receiver with undoubted power to sell. We have, further, certain physical assets under his control and a certain franchise, all subject to the receiver's power of sale. The franchise, however, is rendered *practically* unsalable by section 12 of the ordinance, since no utility company is likely to purchase this franchise with the possibility that its terms would be affixed to an existing franchise of. the purchaser. It is also highly probable that the physical property is practically unsalable except to a purchaser who expects to be able to use it under an existing franchise, and public policy is not offended by the purchase of these physical assets by an established company.

It therefore seems proper to conclude that only by a sale of the physical assets separate from and not subject to the franchise, can anything substantial be realized for any of the physical prop-

erty of the company within the streets and public places of the city.

The further question arises: Can the court order a sale of the physical assets separate and apart from the franchise to a purchaser unwilling to acquire the franchise? We think it can. The situation should be treated, to quote the statute, "as justice and equity shall require." Equity should not permit the city to accomplish a practical forfeiture when there was none in fact and law.

The city points to section 16 of the ordinance by which the title to the company's physical property in the streets passes to the city upon the termination of the secondary franchise. But it must be noted that thereunder two things are requisite to pass the property at the end of fifty years—(1) that the physical property must be the property of the Newark Telephone Company, and (2) it must *then* be within the streets or public places of the city of Newark.

It is also to be noted that the ordinance throughout keeps distinct the physical assets and the franchise.

Thus, section 12 expressly contemplates the possible assignment by the company of the *privileges and franchises* to another person or corporation and imposes certain consequences on such transfer, which consequences do not reach the physical property.

Section 13 expressly contemplates that the conduits may be used by other telephone or telegraph companies thereafter obtaining a franchise from the city "upon such terms and for such compensation as shall be agreed upon by said (Newark telephone) company," thereby expressly recognizing a partial right of disposition of physical property.

Section 8 is even more significant. Under it *no exclusive* right is given to the Newark Telephone Company, and it provides that the city may compel the company to remove its own *conduits* and bear the expense of their removal.

So it might well be, even if the corporate life of the company had continued, that at the end of fifty years there might then have been no property in the streets belonging to the company, or it might well have been that the property placed in the streets by the company might have been in the interim disposed of by that company to some other company, with the necessary con-

sequence that at the end of the fifty years there would have been in the streets no property of the Newark Telephone Company.

There was, therefore, under the ordinance no necessary continuous union of the franchise and of the physical property in the streets.

If the New York Telephone Company is permitted to complete its purchase of the physical assets from the receiver, it may perhaps choose to remove, under proper regulations, such as are in the streets, or to make use of them where they are. If it adopts the latter course it must justify its conduct under some franchise of its own. The city will thus be fully protected against the consequences of the purchase.

In *Coler* v. *Tacoma Railway and Power Co., 65 N. J. Eq. 347,* this court considered the separation of the physical property from the secondary franchises. A corporation had attempted to transfer to another corporation not only its physical property, but its secondary franchises, leaving to itself only the primary franchise of being a corporation. It was held on a bill filed by a stockholder that the arrangement was illegal, because it amounted to a dissolution of the corporation without a compliance with the provisions of our statute in regard to dissolution. Mr. Justice Dixon says (at *p. 349*), speaking of a clause in the corporation's certificate of incorporation :

"It authorizes the transfer of property only, while the arrangement in question requires the transfer, not merely of all the property, but also of all the franchises of the company, except the franchise of being a corporation. A corporation which has sold only its property, receiving therefor a valuable consideration, is still able to engage in new enterprises within the scope of its charter; but one which has parted with all its franchises except that of existence is, for all purposes, outside of the winding up of its affairs, defunct."

The propriety of a sale, under certain circumstances, of physical assets separate from the franchise is thus recognized, and we think that a sale of the physical assets, apart and free from the secondary franchise, which has been ordered in the present case, is within the power of the court of chancery, and was in all respects proper.

The order under review will be affirmed, with costs.

*88 N. J. Eq.*          West N. Y. Imp. Co. *v.* Town of West N. Y.

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, BERGEN, KALISCH, BLACK, HEPPENHEIMER, WILLIAMS—9.

*For reversal*—PARKER, MINTURN, WHITE, TAYLOR—4.